No. 1:17-cv-7222 (JGK)

IN THE

# United States District Court for the Southern District of New York

IN RE: OCEAN RIG UDW INC., *et al*.

TALLY MINDY WIENER,

*Appellant*,

*v.*

OCEAN RIG UDW INC., *et al.*,

*Appellees*.

On Appeal from the United States Bankruptcy Court for
the Southern District of New York
No. 17-bk-10736 (MG)
Hon. Martin Glenn

## APPELLEES' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Kelsi Brown Corkran
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, D.C. 20005
(202) 339-8400
(admitted *pro hac vice*)

Evan C. Hollander
Daniel A. Rubens
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
(212) 506-5000

*Counsel for Appellees*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ............................................................................1

BACKGROUND ..............................................................................3

    I.     Chapter 15 Recognition..........................................................3

    II.    The Parties ............................................................................4

    III.   A Market Downturn Renders The Debtors Insolvent And
         Prompts Their Restructuring ..................................................5

    IV.   The Debtors Seek Chapter 15 Recognition Of The Cayman
         Proceedings ..........................................................................6

    V.    The Bankruptcy Court Grants Recognition.............................7

    VI.   The Cayman Court Sanctions The Schemes, And The
         Bankruptcy Court Issues An Order Enforcing Them...........................8

    VII.  The Restructuring Becomes Final On September 22, 2017...............10

ARGUMENT ..................................................................................11

    I.     Ms. Wiener Lacks Standing To Pursue This Appeal. ........................11

    II.    This Appeal Is Equitably Moot ........................................15

CONCLUSION ................................................................................22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adar 980 Realty, LLC v. Sofer*,
  No. 14cv3031 (ARR), 2014 WL 3890110
  (E.D.N.Y. Aug. 5, 2014) ...................................................................................14

*In re Adelphia Commc'ns Corp.*,
  222 F. App'x 7 (2d Cir. 2006) ...................................................................18, 19

*Allstate Ins. Co. v. Hughes*,
  174 B.R. 884 (S.D.N.Y. 1994) ......................................................18, 19, 20, 21

*In re AOV Indus., Inc.*,
  792 F.2d 1140 (D.C. Cir. 1986) .........................................................................19

*In re Barnet*,
  737 F.3d 238 (2d Cir. 2013) .....................................................................2, 12, 13

*Bartel v. Bar Harbor Airways, Inc.*,
  196 B.R. 268 (S.D.N.Y. 1996) .............................................................16, 18, 20

*In re BGI, Inc.*,
  772 F.3d 102 (2d Cir. 2014) ................................................................................2

*In re Charter Commc'ns, Inc.*,
  691 F.3d 476 (2d Cir. 2012) ..............................................................................15

*In re Chateaugay Corp.*,
  10 F.3d 944 (2d Cir. 1993) ....................................................................18, 19, 20

*In re Chateaugay Corp.*,
  988 F.2d 322 (2d Cir. 1993) .........................................................................3, 16

*In re Crystal Oil Co.*,
  854 F.2d 79 (5th Cir. 1988) ...............................................................................16

*In re DBSD N. Am., Inc.*,
  634 F.3d 79 (2d Cir. 2011) ................................................................................12

*In re Delta Air Lines, Inc.*,
  374 B.R. 516 (S.D.N.Y. 2007) ...........................................................................18

*In re Dynegy, Inc.*,
  770 F.3d 1064 (2d Cir. 2014) ............................................................................14

*In re Fairfield Sentry Ltd.*,
  714 F.3d 127 (2d Cir. 2013) ................................................................................4

*Freeman v. Journal Register Co.*,
  452 B.R. 367 (S.D.N.Y. 2010) ..................................................................*passim*

*In re Gen. Growth Props., Inc.*,
  423 B.R. 716 (S.D.N.Y. 2010) .........................................................................18

*In re Gucci*,
  126 F.3d 380 (2d Cir. 1997) .......................................................................12, 13

*In re Hellas Telecomms. (Luxembourg) II SCA*,
  555 B.R. 323 (Bankr. S.D.N.Y. 2016)................................................................3

*In re Johns-Manville, Corp.*,
  843 F.2d 636 (2d Cir. 1988) ..............................................................12, 13, 14

*In re Metromedia Fiber Network, Inc.*,
  416 F.3d 136 (2d Cir. 2005) .............................................................................16

*In re MPM Silicones, L.L.C.*,
  ___ F.3d ___, 2017 WL 4772248 (2d Cir. Oct. 20, 2017) ................................20

*In re Roberts Farms, Inc.*,
  652 F.2d 793 (9th Cir. 1981) ............................................................................20

*In re Salant Corp.*,
  176 B.R. 131 (S.D.N.Y. 1994) .........................................................................12

## Statutes

11 U.S.C. § 1501 .......................................................................................................3

11 U.S.C. § 1504 .......................................................................................................4

11 U.S.C. § 1515 .......................................................................................................4

11 U.S.C. § 1517 ..................................................................................................... 7

11 U.S.C. § 1520 ..................................................................................................... 4

11 U.S.C. § 1521 ..................................................................................................... 4

## INTRODUCTION

Appellant Tally M. Wiener seeks this Court's review of a bankruptcy court order granting recognition of the Cayman Islands-based restructuring of Ocean Rig UDW Inc. (UDW), an international offshore drilling contractor, and three of its subsidiaries (referred to collectively as Ocean Rig or the Debtors).  Exercising its authority under chapter 15 of the Bankruptcy Code, the bankruptcy court granted various forms of relief to facilitate that restructuring, including recognizing the Cayman proceedings as "foreign main proceedings."  Ms. Wiener, an attorney acting *pro se* who purports to be a UDW shareholder, was the sole objector to the recognition motion.  The bankruptcy court overruled her objections, and in the absence of any request for a stay, the restructuring proceeded to its conclusion.

Appellees[1] move for dismissal of Ms. Wiener's appeal under two well-settled prudential doctrines.  First, standing to appeal from bankruptcy court orders is limited to persons "directly and adversely affected pecuniarily" by such an order.

---

[1] The appellees are the four Debtors—UDW, Drill Rigs Holdings Inc., Drillships Financing Holding Inc., and Drillships Ocean Ventures Inc.—as well as Iraklis Sbarounis, the successor to the Joint Provisional Liquidators appointed in the Cayman proceedings in their capacity as the Debtors' authorized foreign representatives.

*In re Barnet*, 737 F.3d 238, 242 (2d Cir. 2013) (explaining that this limitation is necessary because "freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters").  Ms. Wiener's status as a putative shareholder does not satisfy this standing requirement.  The Debtors' significant insolvency during these restructuring proceedings is beyond dispute, and that fact precluded any possibility of recovery by shareholders, as opposed to secured and unsecured creditors.  Indeed, Ms. Wiener has never explained how undoing recognition would provide shareholders—or any other party in interest—any actual relief.  The only third parties who had any financial stake in the restructuring were those creditors, none of whom objected to the recognition and indeed overwhelmingly supported it.  Because Ms. Wiener, as a purported "equity holder, cannot assert the rights and interests of these third parties," her appeal must be dismissed for lack of standing.  *Freeman v. Journal Register Co.*, 452 B.R. 367, 372 (S.D.N.Y. 2010).

Second, because "effective relief on appeal becomes impractical, imprudent, and … inequitable" once a restructuring is complete, the doctrine of equitable mootness requires certain bankruptcy appeals to be dismissed at the outset.  *In re BGI, Inc.*, 772 F.3d 102, 107 (2d Cir. 2014).  Dismissal under this doctrine is warranted where, as here, "the appellant has made no effort to obtain a stay and has permitted such a comprehensive change of circumstances to occur as to render it

inequitable for the appellate court to reach the merits of the appeal." *In re Chateaugay Corp. (Chateaugay I)*, 988 F.2d 322, 325 (2d Cir. 1993) (quotation marks omitted).  In the absence of even a request for a stay by Ms. Wiener, the Cayman restructuring has already been consummated, with substantial distributions made to creditors.  The chapter 15 recognition order and the subsequent order of the bankruptcy court giving full force and effect to the Cayman restructuring were conditions to the consummation of the restructuring and have been relied upon by creditors, the Debtors, and other stakeholders. Nullifying the chapter 15 proceedings would thus impinge on the rights of third parties who overwhelmingly supported the restructuring, and risk undoing compromises essential to the Debtors' post-restructuring viability.  It is accordingly inequitable for this appeal to proceed.

In sum, because Ms. Wiener cannot show she has any pecuniary stake in this appeal's outcome, or that it would be feasible—let alone equitable—to undo a restructuring that has already concluded, this Court should dismiss her appeal.

## BACKGROUND

### I.     Chapter 15 Recognition

The purpose of chapter 15 is to foster international cooperation in cases of cross-border insolvency.  11 U.S.C. § 1501(a)(1); *see also In re Hellas Telecomms. (Luxembourg) II SCA*, 555 B.R. 323, 343 (Bankr. S.D.N.Y. 2016) ("Congress

enacted chapter 15 … to foster international cooperation and comity, and provide greater certainty and more efficient administration of cross-border cases."). Accordingly, chapter 15 permits representatives of foreign debtors to commence an ancillary case in the United States by petitioning for recognition of a foreign proceeding.  11 U.S.C. §§ 1504, 1515.  A U.S. bankruptcy court's decision to grant recognition, in turn, authorizes various forms of automatic and discretionary relief. *Id.* §§ 1520, 1521.  In particular, recognition of a foreign insolvency proceeding as a "foreign main proceeding," as the bankruptcy court granted here, has significant implications for the debtor, including imposing an automatic stay to protect the debtor and its property.  *See In re Fairfield Sentry Ltd.*, 714 F.3d 127, 133 (2d Cir. 2013) (citing 11 U.S.C. § 1520(a)).

## II.    The Parties

Ocean Rig UDW Inc. is the holding company of the Ocean Rig Group and the parent of three subsidiary Debtors.  Dkt. 5 ¶ 3.[2]  Ocean Rig Group is an international offshore oil drilling contractor and owner and operator of drilling rigs.  *Id.* ¶ 7.

---

[2] Unless otherwise indicated, citations to "Dkt." refer to the Bankruptcy Court's docket (Case No. 17-10736 (MG)).

Ms. Wiener is an attorney and purported shareholder of UDW who has represented herself in these proceedings.  Dkt. 89, at 1; Dkt. 129, at 6.  She claims to have purchased shares of UDW at some point before she filed her objection to recognition, but has never demonstrated how many shares she acquired or when she purchased them.

### III. A Market Downturn Renders The Debtors Insolvent And Prompts Their Restructuring

The unprecedented drop in crude oil prices over the past several years has severely depressed the off-shore drilling market.  Dkt. 5 ¶ 13.  Due to these market forces and substantial payments coming due under the Debtors' various debt instruments in 2017, the Debtors were unable to remain solvent.  *Id.* ¶¶ 14-16; Dkt. 129, at 10-11; Dkt. 151, Ex. A ¶¶ 3-4.  In light of the Debtors' financial challenges, they retained legal and financial advisors in early 2016 to consider restructuring alternatives.  Dkt. 5 ¶ 17.

These efforts culminated in an agreement, supported by an overwhelming majority of affected creditors, to restructure the Debtors' financial indebtedness in the Cayman Islands.  The restructuring agreement was implemented via four interrelated plans, referred to as schemes of arrangement (the Schemes) under Cayman law.  *Id.*  The Schemes contemplated a substantial deleveraging of Ocean Rig, through the exchange of more than $3.7 billion of existing financial indebtedness for new equity in UDW which was projected to be worth about

$1.831 billion, cash payments of about $288 million, and new secured debt of $450 million.  *Id.*; *see also* Declaration of Iraklis Sbarounis in Support of Appellees' Motion to Dismiss (Sbarounis Decl.) ¶¶ 6, 9.

To begin the process of obtaining the requisite court approval for the Schemes, the Debtors filed winding up petitions in the Cayman Islands, where UDW is domiciled.  Dkt. 151, Ex. A ¶ 3; Dkt. 5 ¶ 4.  On March 27, 2017, the Cayman court appointed two Joint Provisional Liquidators (JPLs) and authorized them to commence the chapter 15 proceedings on behalf of the Debtors.  Dkt. 4, Ex. A.  Later that day, the JPLs commenced chapter 15 cases for each of the Debtors in the U.S. Bankruptcy Court in the Southern District of New York, seeking recognition of the Cayman proceedings as "foreign main proceedings" and related relief under the Bankruptcy Code.  Dkts. 1-2.  As all creditors involved in these cases recognized, the Debtors were insolvent prior to the restructuring, as their liabilities exceeded the value of their assets by a substantial margin.

## IV.   The Debtors Seek Chapter 15 Recognition Of The Cayman Proceedings

Although certain creditors initially expressed an intention to object to recognition, ultimately, none followed through.  One entity, Highland Capital Management LP (acting for several managed funds that were significant creditors of UDW), conducted substantial discovery regarding the recognition motion.  *See*

Dkts. 43, 76, 78.  In June, however, Highland terminated its discovery efforts and announced that it would not object to recognition.  Dkt. 81.

Although Ms. Wiener was aware of the proceedings since at least April 2017, Dkt. 114, Ex. A, she did not participate in any aspect of the cases until she filed her objection to the recognition motion on July 10, 2017, the last possible date to do so.  *See* Dkts. 78, 88, 89.  In that objection, Ms. Wiener contended, *inter alia*, that the Debtors had failed to meet their burden of proving either that their "center of main interests" (COMI) was in the Cayman Islands or that the Debtors maintained an "establishment" in the Cayman Islands such that the Cayman proceedings could qualify for recognition under 11 U.S.C. § 1517.  Dkt. 89, at 2.[3] Besides Ms. Wiener, no other party in this $3.7 billion cross-border restructuring filed an objection to recognition.

## V.   The Bankruptcy Court Grants Recognition

The bankruptcy court held a hearing on recognition, during which the parties, including Ms. Wiener, presented evidence and examined witnesses.  On August 24, 2017, the bankruptcy court overruled Ms. Wiener's objections and issued an opinion and order granting recognition (the Recognition Order), from

---

[3] On the eve of the recognition hearing, Ms. Wiener filed a letter motion challenging the venue of the chapter 15 proceedings.  Dkt. 112.

which Ms. Wiener now appeals.  Dkts. 129-30.  The bankruptcy court held, among

other things, that venue was proper in the Southern District of New York; that Ms.

Wiener had failed to establish that she was a party-in-interest with standing to

contest recognition; that the Debtors' COMI was in the Cayman Islands; that the

Debtors did not manipulate their COMI in bad faith; and that granting recognition

of the Cayman proceedings advanced the public policy objectives of chapter 15.

Dkt. 129, at 6, 22, 25-34.  The Recognition Order, by its terms, became

"immediately effective and enforceable upon its entry."  Dkt. 130, at 6.  Ms.

Wiener did not seek to stay that order.

## VI.    The Cayman Court Sanctions The Schemes, And The Bankruptcy Court Issues An Order Enforcing Them

Meanwhile, the Cayman restructuring proceedings concluded.  In

September, following a three-day hearing, the Cayman court issued orders

"sanctioning" (*i.e.*, approving) the Schemes.  Dkt. 149, Exs. A-D; *see also*

Dkt. 151, Ex. A.  In that regard, the Cayman court determined that "[t]he

restructuring of all four Schemes put together is the best way of maximising value

for the creditors of the Group," who "overwhelming[ly] support[ed]" the

transaction.  Dkt. 151, Ex. A ¶¶ 7-8, 130-31.  The Cayman court found that the

alternative to the Schemes would be liquidation and enforcement of security by

creditors, which "would result in value destruction generally for all creditors."  *Id.*

¶ 11.  Neither the Cayman court nor any party involved in those proceedings ever

suggested that there was sufficient value in the Debtors to pay creditor claims in full and to support any legal entitlement to a recovery by shareholders.

In the chapter 15 proceedings, following the Recognition Order and after the Schemes were sanctioned by the Cayman court, the JPLs moved for an order granting comity and giving full force and effect to the Schemes (the Enforcement Order).  Dkt. 122.  Ms. Wiener had notice of this motion, its objection deadline, and hearing date, Dkts. 126-27, but did not file any objection or appear at the hearing.

At the September 20, 2017 hearing on the motion for the Enforcement Order, the bankruptcy court observed that the Cayman court had provided "a very careful, thoughtful, reasoned decision in support of [its] entry of the order sanctioning the schemes of the four Debtors."  Sept. 20, 2017 Hr'g Tr. at 10:8-10. Later that day, the bankruptcy court issued the Enforcement Order recognizing, granting comity, and giving full force and effect to the Cayman court's orders sanctioning the Schemes and to the Schemes themselves.  Dkt. 153.  The bankruptcy court found, among other things, that the enforcement relief requested was "necessary to effectuate the purpose of chapter 15 and to protect the Debtors, their assets and the interests of their creditors and other parties in interest."  *Id.* ¶ 6. No party appealed from the Enforcement Order, which by its terms became effective immediately.

9

## VII.   The Restructuring Becomes Final On September 22, 2017

On September 22, 2017 (the Restructuring Effective Date), the Schemes became effective pursuant to Section 4 of the Scheme of Arrangement of each Debtor.  Sbarounis Decl. ¶ 8; *id.*, Exs. A, B; *see also* Dkt. 149, Exs. A-D,[4] at § 4 (conditioning effectiveness of Schemes upon giving notice to creditors of the satisfaction or waiver of various conditions specified in section 4.1 of each Scheme).  On the Restructuring Effective Date, several events occurred affecting the rights of creditors and third parties as provided under the Schemes.  Sbarounis Decl. ¶ 9.  First, UDW issued significant new equity to certain of its creditors, which was estimated under various scheme documents to have a value of about $1.831 billion.  *Id.* ¶ 9(a); *id.*, Ex. C, at 120.[5]  The new equity of UDW continues

---

[4] The UDW Scheme begins at Dkt. 149-1, at 6.  The DRH Scheme begins at Dkt. 149-2, at 5.  The DFH begins at Dkt. 149-3, at 5.  The DOV Scheme begins at Dkt. 149-4, at 5.

[5] In connection with the issuance of new equity to creditors, UDW effectuated a reverse stock split on September 21, 2017.  The reverse stock split effected an exchange of every 9,200 of existing shares into one share of the reorganized company, resulting in existing shareholders' retaining 0.02% of the reorganized company.  *Id.*, Ex. A, at 2; *id.*, Ex. C, at 120.

to trade on Nasdaq under the symbol ORIG.  *Id.*  The Debtors have also distributed approximately $288 million in respect of creditor claims, and have issued cash payments to creditors.  *Id.* ¶ 9(b).  Further, UDW and certain of its subsidiaries have issued $450 million of new secured notes in respect of creditor claims and have entered into a substantial, long-term management services agreement with TMS Offshore Services Ltd.  *Id.* ¶¶ 9(c), (d).  UDW also entered into a new shareholders' agreement.  *Id.* ¶ 9(e).  On October 4, 2017, the Cayman court issued orders discharging the JPLs.  *Id.* ¶ 4.  Recognition of the Schemes and issuance of the Enforcement Order were conditions precedent to consummation of the restructuring.  *See* Dkt. 149-1, at 11 § 4.1(f) (listing the granting of the "Chapter 15 Orders" as a condition precedent); Dkt. 149-2, at 10 § 4.1(i) (same); Dkt. 149-3, at 10 § 4.1(j) (same); Dkt. 149-4, at 10 § 4.1(j) (same); Dkt. 162-8, at 420-21 (defining "Chapter 15 Orders" as the Recognition and Enforcement Orders).

## ARGUMENT

This appeal should be dismissed on two independent grounds: (1) Ms. Wiener lacks standing, and (2) her appeal is equitably moot.

## I.    Ms. Wiener Lacks Standing To Pursue This Appeal.

Ms. Wiener lacks standing to appeal the bankruptcy court's Recognition Order because she is not an "aggrieved person" with a pecuniary interest in Ocean Rig's restructuring; instead, she seeks only to assert the rights of third parties.  *See*

*Freeman v. Journal Register Co.*, 452 B.R. 367, 371 (S.D.N.Y. 2010) (holding that standing in the bankruptcy appeals context considers whether the appellant is an "aggrieved person" with a direct pecuniary interest in the underlying restructuring, and whether the appellant has "prudential standing," such that the appellant is asserting "[her] own legal rights and interests and not those of third parties").

**A.**  Under long-established Second Circuit law, a party to a bankruptcy proceeding can appeal a bankruptcy court's order "only if the order directly affects his pecuniary interests." *In re Johns-Manville, Corp.*, 843 F.2d 636, 642 (2d Cir. 1988); *see also In re Gucci*, 126 F.3d 380, 388 (2d Cir. 1997) ("To have standing to appeal from a bankruptcy court ruling in this Circuit, an appellant must be … directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." (quotation marks omitted)).  The "aggrieved person" test is demanding; it is "stricter" than the "injury in fact" test under Article III, *id.*, and means that not every "party in interest" with a right to be heard in the bankruptcy court has standing to prosecute an appeal, *see, e.g.*, *In re Salant Corp.*, 176 B.R. 131, 134-35 (S.D.N.Y. 1994).  Mere "potential harm" from a bankruptcy court order is "insufficient to justify appellate standing." *In re Barnet*, 737 F.3d 238, 243 (2d Cir. 2013).  Instead, an appellant must show that her injury is both "'direct[]' and 'financial.'" *In re DBSD N. Am., Inc.*, 634 F.3d 79, 88-89 (2d Cir. 2011) (quoting *Johns-Manville Corp.*, 843 F.2d at 642 & n. 2).  Were it otherwise,

"marginal parties," *Johns-Manville Corp.*, 843 F.2d at 642 n.2, could mire

proceedings in "endless appeals," *Barnet*, 737 F.3d at 243, "sound[ing] the death

knell of the orderly disposition of bankruptcy matters." *Gucci*, 126 F.3d at 388.

Ms. Wiener is not an "aggrieved person" who is entitled to appeal from the

Recognition Order.  As a purported shareholder of the Debtors, she lacks the

requisite direct interest in the restructuring.  That is because holders of equity in an

insolvent enterprise are not entitled to receive *any* distributions on account of their

shares.  The provisions of this restructuring reflect as much: The Schemes provide

creditors only $2.6 billion in distributable value (in the form of new equity, cash

payments, and secured debt).  Sbarounis Decl. ¶ 6.  Prior to the restructuring's

consummation, the Debtors were deeply insolvent, with $3.7 billion in outstanding

debt.  Dkt. 129 at 7-9, 21; Dkt. 5 ¶¶ 15-16.  Indeed, after carefully considering

objections to the Schemes, the Cayman court concluded that the Schemes

represented a "fair allocation" to creditors, and the "alternative" would "involve

inevitably the liquidation of the [Debtors] and … value destruction generally for all

creditors."  Dkt. 151, Ex. A ¶¶ 10-11, 130.  Thus, the Debtors "were not

sufficiently solvent to provide equity holders with a recovery," and Ms. Wiener, as

an equity holder, lacks "a pecuniary interest at stake" that would support her

appellate standing.  *Freeman*, 452 B.R. at 371.

**B.** Ms. Wiener cannot avoid dismissal by asserting the rights of third parties, let alone those who overwhelmingly supported the restructuring.  As the Second Circuit has explained, longstanding principles of third-party standing preclude a litigant in bankruptcy from "disturb[ing] a plan of reorganization based on the rights of third parties who apparently favor the plan."  *Johns-Manville Corp.*, 843 F.2d at 644; *see also In re Dynegy, Inc.*, 770 F.3d 1064, 1068 (2d Cir. 2014) ("In general, a [party in bankruptcy] lacks standing to assert the rights or interests of third parties.").  To be heard on appeal, a party to a bankruptcy proceeding must "assert his own legal rights and interests," not those of others.  *Freeman*, 452 B.R. at 371.

Ms. Wiener cannot meet that requirement.  Having no pecuniary interest of her own in the restructuring, the interest she asserts in fact belongs to the creditors.  *Cf. Adar 980 Realty, LLC v. Sofer*, No. 14cv3031 (ARR), 2014 WL 3890110, at *5 (E.D.N.Y. Aug. 5, 2014) ("Appellant does not allege any harm suffered by it that is distinguishable from that suffered by other creditors."), *aff'd*, 613 F. App'x 92 (2d Cir. 2015).  As the Cayman court noted in approving the Schemes, the Debtors obtained the "overwhelming support" of creditors—*i.e.*, the parties whose pecuniary interests are actually affected by the Schemes.  Dkt. 151, Ex. A, ¶¶ 7, 80, 131; *see also Freeman*, 452 B.R. at 372 ("It is also relevant to note that the creditors here have indicated their support by voting overwhelmingly in favor of

14

the Plan.").  And no one except Ms. Wiener objected to the bankruptcy court's recognition of the Cayman proceedings.  To this day, it remains unclear how any party in interest would be served by the relief sought through her appeal: reversal of the Recognition Order.  Because the parties with a stake in the Schemes have given them their approval, Ms. Wiener should not be heard to second-guess their choice.

## II.   This Appeal Is Equitably Moot

In the alternative, Ms. Wiener's appeal should be dismissed because it is equitably moot.  Through this appeal, Ms. Wiener seeks to upend the Recognition Order on various grounds.  *See* Dkt. 154 (Appellant's Statement of Issues) (contending, *inter alia*, that chapter 15 venue was improper, that the Debtors' COMI was not the Cayman Islands, that the Debtors improperly attempted to shift their COMI, and that recognition violates U.S. public policy).  Ms. Wiener did not seek a stay of the Recognition Order, and the Schemes have since been approved by the Cayman court and implemented by the parties.  Because granting Ms. Wiener the relief she seeks would "unjustly upset[] a debtor's plan of reorganization," *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 481 (2d Cir. 2012), dismissal is warranted.

As the Second Circuit has explained, because a bankruptcy court's ability to achieve finality "is essential to the fashioning of effective remedies,"

*Chateaugay I*, 988 F.2d at 325, the doctrine of equitable mootness precludes challengers to a bankruptcy order from "disturbing a reorganization plan once implemented."  *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 144 (2d Cir. 2005).  Accordingly, an appeal from a bankruptcy court order should be dismissed under this doctrine, even where "effective relief could conceivably be fashioned," when "implementation of that relief would be inequitable."  *Chateaugay I*, 988 F.2d at 325; *see also Metromedia,* 416 F.3d at 145 ("[T]he question is not solely whether we *can* provide relief without unraveling the [reorganization], but also whether we *should* provide such relief in light of fairness concerns.").

In determining whether an appeal is equitably moot, courts in the Second Circuit first consider whether the appellant sought a stay of the bankruptcy court order she challenges.  A party who appeals an order "without seeking to avail himself of [a stay] does so at [her] own risk."  *Chateaugay I*, 988 F.2d at 326.  If the appellant has not sought a stay, and the result is a "comprehensive change of circumstances" respecting the underlying restructuring, then "dismissal is appropriate."  *Chateaugay I*, at 325 (quoting *In re Crystal Oil Co.*, 854 F.2d 79 (5th Cir. 1988)); *see also Freeman*, 452 B.R. at 372 (applying "strong presumption that an appeal of an unstayed order is moot" (quotation marks omitted)); *Bartel v. Bar Harbor Airways, Inc.*, 196 B.R. 268, 273 (S.D.N.Y. 1996) ("[A]n appeal is presumed moot when the [failure to seek a stay] has permitted such a

comprehensive change in circumstances to occur that it is inequitable to hear the merits of the case." (alterations and quotation marks omitted)).

Ms. Wiener has never sought a stay of either the Recognition or Enforcement Orders (and has never even challenged the latter). *See supra* Background § V.  Moreover, the conclusion and consummation of the Cayman proceedings has resulted in a comprehensive change in the circumstances surrounding the restructuring, such that the presumption of mootness kicks in.  In September, the Cayman court held a three-day hearing and issued orders approving the schemes. *See supra id.* § VI.  Later that month, as a result of the Recognition Order, the issuance of the Enforcement Order and other pre-conditions of the Schemes having been satisfied or waived, the Schemes became effective and drastically restructured the Debtors' relationship with various creditors:  In exchange for cancellation of close to $4 billion in existing debt, the Debtors granted significant new equity to creditors, and UDW's stock now freely trades on NASDAQ.  The Debtors also made $288 million in cash distributions to creditors, issued $450 million of new notes, and entered into a new governance agreement affecting the rights of creditors that were granted new equity.  In addition, the Debtors entered into a substantial, long-term management services agreement.  The

JPLs were also discharged in October.  *See supra id.* § VII.  This Court and others in this District have repeatedly found changed circumstances in similar contexts.[6]

To avoid dismissal in this situation, the appellant must "demonstrate that the relief [she] seek[s] would not create inequitable results."  *In re Adelphia Commc'ns Corp.*, 222 F. App'x 7, 8 (2d Cir. 2006).  To do so, she must satisfy all five equitable criteria identified in *In re Chateaugay Corp.*, 10 F.3d 944 (2d Cir. 1993) ("*Chateaugay II*").  *See Freeman*, 452 B.R. at 372; *In re Delta.*, 374 B.R. at 523.

---

[6] *See, e.g.*, *Freeman*, 452 B.R. at 373 (finding substantial consummation based on, *inter alia*, "cash distributions to various claim holders," issuance of new stock, and "signing new management agreements"); *In re Gen. Growth Props., Inc.*, 423 B.R. 716, 724 (S.D.N.Y. 2010) (identifying disbursement of a loan and release of an existing lien as indicators of changed circumstances); *In re Delta Air Lines, Inc.*, 374 B.R. 516, 523 (S.D.N.Y. 2007) (concluding that changed circumstances included the parties "entering into several new agreements" and the debtor's "distribut[ion of] millions of dollars in freely tradeable stock"); *Bartel*, 196 B.R. at 273 (noting that "millions of dollars in distributions ha[d] already been made, and these assets and distributions cannot be recouped"); *Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 889 (S.D.N.Y. 1994) (citing creditors' vote to approve a Scheme and their receipt of funds as indications of changed circumstances).

Those criteria are: (1) "the court can still order some effective relief"; (2) "such relief will not affect the re-emergence of the debtor as a revitalized corporate entity"; (3) "such relief will not unravel intricate transactions … and create an unmanageable, uncontrollable situation for the Bankruptcy Court"; (4) "the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings"; and (5) "the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order." *Chateaugay II*, 10 F.3d at 952-53 (internal citations, quotations, and alterations omitted).

Ms. Wiener cannot make the necessary showing, as granting the relief she seeks will necessarily "create inequitable results." *Adelphia*, 222 F. App'x at 8. There is simply no "viable means by which this Court or the Bankruptcy Court could grant the requested relief without upsetting" the restructuring. *Freeman*, 452 B.R. at 374. Undoing the Recognition Order would "call into question the validity of [] Scheme[s]" a foreign court has determined to be essential to the Debtors' continued vitality. *Allstate*, 174 B.R. at 890; *see also Chateaugay II*, 10 F.3d at 952-53 (quoting *In re AOV Indus., Inc.*, 792 F.2d 1140 (D.C. Cir. 1986)) (identifying failure to seek a stay and relief that threatens "the re-emergence of the debtor as a revitalized corporate entity" as barriers to overcoming the presumption of mootness). Indeed, the Recognition Order is an essential part of the

restructuring, as the bankruptcy court's order granting recognition was one of the pre-conditions to the Schemes going effective.  *See* Dkt. 149, Exs. A-D, at § 4.1. And in evaluating the *Chateaugay* factors, the Second Circuit "place[s] significant reliance" on whether the appellant "diligently sought a stay," *In re MPM Silicones, L.L.C.*, ___ F.3d ___, 2017 WL 4772248, at *13 (2d Cir. Oct. 20, 2017), something that Ms. Wiener failed to do here.

     With the Schemes now having been consummated, undoing the Recognition Order would require "unravel[ing] intricate transactions" and recouping "proceeds [that have] already [been] distributed," *Bartel*, 196 B.R. at 272, thereby severely prejudicing numerous third parties.  Ms. Wiener has not challenged the bankruptcy court's finding that the Enforcement Order was "necessary to effectuate the purpose of chapter 15 and to protect the Debtors, their assets and the interests of their creditors and other parties in interest."  Dkt. 153 ¶ 6.  Accordingly, the relief Ms. Wiener seeks here would "knock the props out from under the authorization for every transaction that has taken place" under the Schemes and "create an unmanageable, uncontrollable situation for the Bankruptcy Court" *and* the Cayman Court.  *Chateaugay II*, 10 F.3d at 952-53 (quoting *In re Roberts Farms, Inc.*, 652 F.2d 793, 797 (9th Cir. 1981)).

     The application of equitable mootness to Ms. Wiener's appeal is well illustrated by then-Judge Sotomayor's decision in *Allstate Insurance Co. v.*

*Hughes*, 174 B.R. 884 (S.D.N.Y. 1994), an appeal involving chapter 15's predecessor statute.  The appeal in *Allstate*, like Ms. Wiener's appeal here, took place after schemes of arrangement had been approved and become final, such that the rights of creditors had irrevocably changed.  *Id.* at 890; *see also id.* (noting that "concerns of comity" made the Court "reluctant to issue a modification that would call into question the validity of a Scheme").  As here, the appellant failed to seek a stay of the U.S. bankruptcy court order that was the basis of the appeal.  And although the appellant in *Allstate* sought only circumscribed relief (a limited modification of a permanent injunction to eliminate restrictions on an insurer's ability to pursue arbitration), the district court was still unable to rule out the possibility that altering those procedures would result in the scheme's "unraveling."  *Id.* at 890.  Here, by contrast, a successful appeal of the Recognition Order would *necessarily* erode protections essential to the Cayman restructuring and nullify a precondition of its finality.  Thus, the reasons it was inequitable for the *Allstate* appeal to proceed all apply even more forcefully to Ms. Wiener's appeal here.

## CONCLUSION

The court should dismiss Ms. Wiener's appeal.

Respectfully submitted,

*/s/ Evan C. Hollander*

| | |
|---|---|
| Kelsi Brown Corkran | Evan C. Hollander |
| ORRICK, HERRINGTON & | Daniel A. Rubens |
|   SUTCLIFFE LLP | ORRICK, HERRINGTON & |
| 1152 15th Street, N.W. |   SUTCLIFFE LLP |
| Washington, D.C. 20005 | 51 West 52nd Street |
| (202) 339-8400 | New York, NY 10019 |
| (admitted *pro hac vice*) | (212) 506-5000 |

*Counsel for Appellees*

October 30, 2017